IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHENKAN INJURY LAWYERS, LLC. and RICHARD SHENKAN,<br><br>Plaintiff,<br><br>v.<br><br>RUDY FABIAN and FABIAN LEGAL SERVICES, LLC.,<br><br>Defendants | ) | No. 2:19-CV-1520<br><br>***Related Case***<br>2:19-cv-00582-AJS (W.D. Pa.) |

**<u>COMPLAINT FOR EXPEDITED DECLARATORY RELIEF</u>**

NOW COME the Plaintiffs (hereafter collectively "Shenkan"), by and through their undersigned counsel, who make this complaint against Defendants (hereafter collectively "Fabian"). Plaintiffs request a speedy hearing pursuant to Fed. R. Civ. P. Rule 57 as Fabian's orchestrated efforts to interpose an objection to attorney fees and final approval of class action settlement(s) interferes with and adversely affects the orderly disposition of Plaintiffs' pending class actions to the detriment of class members and Plaintiffs.

**<u>INTRODUCTION</u>**

1. As an independent contractor, Rudy Fabian through the law firm Fabian Legal Services, LLC. provided legal research and writing services to Shenkan Injury Lawyers, LLC. on a fixed rate basis.

2. Fabian has already filed two claims seeking the *<u>same</u>* relief: an equitable share of attorney fees in Shenkan's class actions.. Fabian interposed his initial claim for attorney fees in related case *Fabian v. Shenkan*, case number 2:19-cv-00582-AJS (W.D. Pa.)("*Fabian*"), currently pending in this Court, assigned to Judge Arthur Schwab. That claim arises out of attorney fees

awarded to Shenkan in a class action known as *Maszgay v. First Commonwealth Bank*, 686-2015 (Jefferson Co.)("*Maszgay*"). Fabian interposed another claim for attorney fees, based on the same set of facts, in *Langer v. Capital One,* 2:16-cv-06130-HB (E.D. Pa.)("*Langer*"). It is expected that Fabian will continue to file these claims, based on the same set of facts, for each case that Shenkan has in the litigation pipeline that Fabian provided legal research and writing services in, and that result (or may result in) in an attorney fee awarded to Plaintiffs.

3. Over the course of approximately 3 ½ years, Fabian worked on a number of cases for Shenkan, providing legal research and writing services, and Shenkan paid Fabian $315,426.40 ($121,615 in 2018, $90,000 per year on average) in exchange for his services. Copies of IRS Form 1099's are attached as **Exhibit 1**.

4. In all instances, Shenkan, not Fabian, were expressly retained by the clients by a written contingency fee agreement, entered appearances on behalf of all clients, and had all direct contact with all clients, defense counsel, and the courts.

5. Fabian never entered an appearance in any of Shenkan's cases; Fabian has never been listed or identified in any pleading or motion papers as counsel in any of Shenkan's cases; Fabian never served as co-counsel; Fabian never made any ultimate decisions in the strategy of any claim; Fabian never negotiated any claim; and Fabian never incurred any risk of loss, including the prospect of professional liability or the loss of time and expenses. Due to Fabian's self-dealing and breach of their oral agreement, Fabian and Shenkan terminated their relationship.

6. In the two legal claims already filed by Fabian (*Fabian* and *Langer*), Fabian claims that, despite their 3½ year working contractual relationship, the parties had no contract of any kind and that Fabian has a right to share in the attorney fees recovered by Shenkan – in Shenkan's cases – under equitable principles, despite the fact that he has already been fully compensated for

his services. In *Fabian* – despite no representation of any client – Fabian asserts a quantum meruit claim and argues that he is entitled to a share of the attorney fee awarded to Shenkan as sole class counsel in *Maszgay.* In *Langer* – despite no representation of any client – Fabian has moved for intervention and asserts what could only be considered an equitable attorney charging lien against an attorney fee award currently being sought by Shenkan.

7. Based on Fabian's past practice, there is a high likelihood of Fabian filing repetitive claims in all of Shenkan's other cases. This action seeks, *inter alia*, the determination that Fabian has no right to assert a claim for attorney fees or any other claims as to Defendants working relationship with Shenkan or Shenkan's cases that he worked on. A prompt determination is necessary as Defendants have sought (and will likely continue to seek) to inject themselves in Shenkan's cases, which affects Shenkan's relationship with his clients and the orderly administration of the cases in which he is involved.

**PARTIES**

8. Plaintiff Richard Shenkan is an adult individual who is a citizen of the state of Michigan, domiciled at 6550 Lakeshore Street, West Bloomfield, Michigan 49323. Additionally, he has been registered to vote in Michigan and has held a driver's license in Michigan for many years. Richard Shenkan is the sole member and owner of Defendant Shenkan Injury Lawyers, LLC, a Pennsylvania limited liability company. Shenkan Injury Lawyers LLC is a law firm. Plaintiffs Richard Shenkan and Shenkan Injury Lawyers, LLC will be collectively referenced herein as "Shenkan."

9. Defendant Rudy Fabian is an adult individual who is a citizen of the state of Pennsylvania, or in the alternative, a state other than Michigan. Rudy Fabian and his non-lawyer wife, Camille, are (or in the alternative, at all relevant times were) members and owners of Fabian

Legal Services, LLC., a Pennsylvania limited liability company. (*Fabian,* ECF 29-1). Fabian Legal Services, LLC. is a law firm. Defendants Rudy Fabian and Fabian Legal Services, LLC. will be collectively referenced herein as "Fabian."

10. At all relevant times, Richard Shenkan and Rudy Fabian were attorneys duly licensed to practice law in the Commonwealth of Pennsylvania.

**JURISDICTION AND VENUE**

**Subject Matter Jurisdiction**

11. This Court has subject matter jurisdiction over this matter based on 28 USC 1332(a)(1) (diversity of citizenship; amount in controversy). This declaratory action seeks a declaration regarding rights and obligations that are disputed and far exceeds $75,000.00.

12. The citizenship of a natural person is the state where that person is domiciled, and a limited liability company is a citizen of all of the states that its members are domiciled in.

13. Defendants Rudy Fabian and Fabian Legal Services, LLC. are citizens of the Commonwealth of Pennsylvania, or in the alternative, are citizens of a state other than Michigan.

14. Shenkan Injury Lawyers, LLC, is a limited liability company whose sole member is Richard Shenkan, a Michigan domiciliary. Although this limited liability company was formed in Pennsylvania, its citizenship for diversity purposes is Michigan, where its sole member is domiciled.

**Immediate Need for Declaratory Relief and Speedy Hearing**

15. This Court has jurisdiction to award the requested declaratory relief under 28 U.S.C. §§ 2201-02 and to conduct a speedy hearing pursuant to Rule 57. As set forth below, the facts alleged demonstrate that there is an actual case or controversy between the parties with adverse legal interests of such immediacy and existence so as to warrant a declaratory judgment

with a speedy determination pursuant to F.R.C.P. Rule 57, to wit:

a. Fabian has already instituted litigation against Shenkan regarding a class action case *Maszgay v. First Commonwealth Bank*, 686-2015 (Jefferson Co.) and asserted an equitable attorney charging lien against the attorney fee award in another class action case, *Langer v. Capital One,* 2:16-cv-06130-HB (E.D. Pa.) – both actions that Fabian worked on for Shenkan as an independent contractor on a fixed rate basis (where Shenkan was appointed as sole class counsel);

b. Fabian asserted claims for a share of attorney fees in *Maszgay* through a related lawsuit *Fabian v. Shenkan*, 2:19-cv-00582-AJS (W.D. Pa.), which is pending in this Court. Rather than seek leave to amend the complaint in *Fabian*, Fabian sought to intervene in *Langer* and has asserted an equitable charging lien seeking to share in any attorney fee award entered by the *Langer* Court.

c. Based on the above, Plaintiffs believe, and therefore aver, that Fabian will bring additional similar litigation and/or will seek to intervene and file an equitable charging lien in other of Shenkan's cases which Fabian provided research and writing services; and,

d. Fabians' claim for a share of attorney fees awarded (or to be awarded) in *Fabian*, *Langer*, and all other cases arise from the <u>same</u> facts and circumstances. The rights and liabilities (or lack thereof) should be determined now, in one proceeding rather than piecemeal in the interest of judicial efficiency and to avoid the possibility for inconsistent rulings on the nexus of events.

e. There is a significant sense of urgency as Fabian's conduct threatens Shenkan's good relations with his clients and the orderly administration of the claims Shenkan is litigating (or preparing to litigate). Additionally, despite the settlement of the *Langer* and *Maszgay* matters, Shenkan is obligated to continue to spend enormous amounts of time in the administration process as these settlements includes an accord and satisfaction of disputed deficiency balances. Plaintiffs have undertaken the duty to continue to work with class members who may not understand how to handle the Bank's issuance of the 1099-C and their concomitant potential tax obligations in light of the accord and satisfaction component. The attorney fee to be awarded contemplates Shenkan's continued efforts with class members; however, Fabian seeks a share of attorney fees on cases without any continued involvement of the significant work which Shenkan must continue to undertake to protect Shenkans' clients' rights.

**Venue and Consolidation with Related Case**

16. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this District. Fabian performed the subject independent contractor services of legal research and writing for Shenkan in this District and a related case, *Fabian v. Shenkan*, 2:19-cv-00582-AJS (W.D. Pa.) is pending in this Court before the Honorable Arthur J. Schwab. This declaratory relief will encompass ***all*** of the cases which Fabian provided research and writing services for Shenkan to determine the parties' respective rights, entitlements, and obligations, particularly whether Fabian has a right to any equitable share of any attorney fee on any of Shenkan's cases. Plaintiffs will seek to consolidate this related case with *Fabian* for purposes of judicial efficiency.

**FACTUAL BACKGROUND**

17. By oral agreement, Fabian began working as an independent contractor for Shenkan, for an agreed upon periodic payment every two weeks, in approximately the Spring of 2015, performing legal research and writing services, at Shenkan's direction, on a variety of Shenkan's cases.

18. After exchanging drafts of a written agreement that would govern their working relationship – the last of which was sent by Fabian to Shenkan where he made comments and proposed changes but did ***not*** object in any way to the material provision stating that Fabian is not entitled to any "fee sharing…or equitable share" of any attorney fees obtained by Shenkan (*Fabian,* ECF 29-4, p. 1) – the parties entered into an oral agreement, with the essential terms being:

a. Fabian would work as an independent contractor;

b. In exchange for providing legal services to assist with Shenkan's cases (principally legal research and writing) working 45-50 hours

per week, Shenkan would pay Fabian:

1. bi-monthly payments of $2,865 (See *Fabian,* ECF 29-2); and,

2. bonuses ***at Shenkan's sole discretion*** (no fee-sharing and no equitable sharing of any of Shenkan's attorney fees generated on Shenkan's cases; Fabian would incur no risk of loss on any of Shenkan's cases);

c. Reimbursement of Fabian's expenses relating to Fabian's work for Shenkan, as necessary (See *Fabian,* ECF 29-12);

d. A furnished office (rent paid by Shenkan), along with a computer, two monitors, and printer, (See *Fabian,* ECF 29-5), and office supplies to be used by Fabian for his legal services on Shenkan's cases; and,

e. Fabian would provide Shenkan with a right of first refusal before he would work for other attorneys.

19. Fabian asked Shenkan numerous times to change the term of the discretionary bonus (as orally agreed to by the parties) such that Fabian would share in a portion of attorney fees in Shenkan's cases which Fabian performed legal research or writing. Fabian requested this "co-counsel" modification despite the fact that Fabian:

a. Did not originate a *single* case for Shenkan, despite innumerable promises to do so;

b. Was not willing to advance any costs or assume any risk of loss or liability for any of Shenkan's cases; and,

c. Was not willing to devote any considerable additional hours than he was already working, purportedly due to his family and other personal obligations.

20. Shenkan summarily rejected Fabian's multiple requests. The parties' express oral agreement was not revised.

21. Significantly, in ***all*** cases which Fabian worked on for Shenkan during their 3½ year relationship, Fabian:

    a. Did not refer any client to Shenkan;

b. Did not enter into any co-counsel agreement with Shenkan;

c. Did not enter an appearance on any of Shenkan's cases;

d. Did not attend any deposition in any of Shenkan's cases;

e. Did not make any argument in any court proceeding in any of Shenkan's cases;

f. Did not participate in any aspect of any settlement negotiations in any of Shenkan's cases;

g. Did not attend any mediation in any of Shenkan's cases;

h. Did not advance any costs in any of Shenkan's cases;

i. Did not incur any risk of loss in any of Shenkan's cases.

22. Instead, in ***all*** cases upon which Fabian worked:

a. Shenkan, ***not Fabian***, entered into the client representation contingency agreements with the clients as required by the Code of Professional Conduct; and,

b. Shenkan, ***not Fabian***, entered their appearance as counsel of record, took all depositions, presented matters to the court, interacted with defense counsel, and participated in all settlement conferences and mediations.

23. In short, Fabian worked in the limited capacity of a legal researcher and writer for Shenkan until early January of 2019 and ***received all of the compensation promised***. Indeed, Fabian's resume sets forth:

> **Independent Contractor**
> **2015 - Present** Research and writing for solo practitioner located in Michigan, primarily regarding consumer class action practice.
>
> (*Fabian,* ECF 29-6)

24. The "corresponding exchange of value" which Shenkan paid Fabian totalled **$315,426.40** ($121,615 in 2018, $90,000 per year on average) for the research and writing services Fabian provided to Shenkan as an independent contractor. (**Exhibit 1**). Shenkan Injury Lawyers,

LLC.'s bank statements evidencing full payment of the bi-monthly rate of $2,850 are set forth in *Fabian*, ECF 29-2 and incorporated herein. Shenkan also reimbursed Fabian's expenses and provided him with an office, computer, and office equipment. (ECF 29-5 and 29-12, incorporated herein).

25. Fabian repeatedly assured Shenkan that he did not have any additional time to spend on Shenkan's work and that he was not spending any time on any other legal matters other than Shenkans' matters. This representation, however, was false.

26. Shenkan's and Fabian's working relationship ended in early January of 2019, when Shenkan discovered that Fabian *secretly* performed significant work on a (competing) class action (*McDonald v. Wells Fargo,* 2:16-cv-00264-MAK) ("*McDonald*") for other attorneys (a fact which Fabian initially denied but eventually admitted) and converted and misused confidential information and Shenkan's resources to perform legal research and writing for other attorneys (including Attorney Bernard Rubb, Fabian's counsel in *Fabian*). These acts and others, which violated Shenkan's right of first refusal and Fabian's duty of loyalty to Shenkan, are detailed in the Answer, Affirmative Defenses, and Counterclaims in *Fabian*, ECF 29.

27. After Fabian's admission, Shenkan reacquired Shenkan Injury Lawyers' laptop computer from Shenkan's Pittsburgh office where Fabian was working, as well as confidential documents from Shenkan's cases. Shenkan requested that Fabian make immediate arrangements to travel (at Shenkan's expense) to Michigan for a face-to-face meeting to discuss whether they would continue their relationship and to jointly review the content of Shenkan's laptop computer, which Shenkan provided to Fabian for his work on Shenkan's cases.

28. Fabian summarily refused:

(a) To provide Shenkan with the password to the Shenkan Injury Lawyers, LLC. firm's lap top computer that Shenkan provided to

Fabian for work on Shenkan's cases; and,

(b) To have a face-to-face meeting in Michigan, at Shenkan's expense.

29. Thereafter, without any attempt to resolve any (perceived) outstanding conflicts, Fabian commenced suit against Shenkan, and tellingly, for the first time, listed his name on the Plaintiffs' Brief in Support of Plaintiff's Motion for Class Certification in the (competing) class action, *McDonald* (*McDonald,* ECF 88).

***<u>The Fabian Lawsuit</u>***

30. On February 14, 2019, Fabian commenced the *Fabian* lawsuit against Plaintiffs in the Court of Common Pleas of Allegheny County, Pennsylvania. On May 16, 2019, Shenkan removed the *Fabian* lawsuit to this Court, then filed a Motion to Dismiss Fabian's Complaint. (*Fabian*, ECF 17) In response to Defendant's Motion to Dismiss, Fabian filed an Amended Complaint (*Fabian*, ECF 15). Fabians' two count Amended Complaint alleged seeks claims for (1) declaratory judgment and (2) quantum meruit. Fabians' claim for a declaratory judgment has since been dismissed. This is the operative complaint in the civil action brought by Fabian.

31. The *Fabian* lawsuit alleges, *inter alia,* that there was no contract between the parties regarding their approximately 3½ year working relationship, and that despite having already received periodic payments, pursuant to their agreement, Fabian is entitled to an equitable share of the attorney fees in the amount of $1.3M, from the $2.9M attorney fee awarded to Shenkan as sole class counsel in *Mazgay*. Fabian claims that Shenkan has been unjustly enriched by Fabian's work on the *Maszgay* class action, where Shenkan (the only attorney of record) was appointed as sole class counsel.

32. Notably, Fabian conducted research for, and helped to draft, the very documents which requested that the *Maszgay* court appoint Shenkan as sole class counsel and to award the

attorney fees solely to Shenkan, which Fabian now remarkably contests. In *Maszgay*, the trial court awarded attorney fees solely to Shenkan, as ***sole class counsel***, on a common-fund basis, applying a lodestar cross-check, and awarded a 2.3 multiplier, totaling $2.9M. The order (which, ironically, Fabian helped to draft) does not state nor suggest that Fabian would participate in the fee award in any respect. (*Fabian,* ECF 29-9).

33. Fabian contends that the mere submission of the lodestar amount corresponding to Fabian in the amount of $599,792.50, as set forth in the *Maszgay* Brief in Support of Uncontested Motion for Final Approval of Settlement Agreement (*Fabian*, ECF 15, Ex. 1) somehow entitles Fabian to receive that amount ***plus*** a proportionate share of the 2.3 multiplier in the amount of "$1,379,522.75 [of the $2.9M attorney fee award] ***less the $45,000 he has been paid.***" (See, *Fabian, ECF 15,* ad damnum clause).

34. In essence, Fabian is attempting to use this Court's equitable powers to collaterally attack (and open) the final judgement entered in the *Maszgay* case.

35. Though Fabians' Amended Complaint clearly acknowledges the payment of consideration for his services and a clear payment term in the form of the fixed periodic payments (which should bar a quantum meruit recovery), Fabian does not plead a claim for breach of contract. The Amended Complaint in *Fabian* even includes the following references to a contract:

a. "Fabian and Shenkan ***did agree*** that in addition to making regular periodic payments to Fabian, Shenkan would pay Fabian a portion of the fees received when a case settled." *(Fabian,* ECF 15, ¶18)(Emphasis added);

b. "Fabian and Shenkan ***did agree*** that at all times relevant to their working relationship Fabian's status would be that of an independent contractor." (*Id.*, ¶22);

c. Shenkan has "refused" to "pay Fabian the balance of fees owed to Fabian in the *Maszgay* case." (*Id.,* ¶42 and ¶80), his "share of the fee award" (*Id.,* ¶40) which Fabian "is entitled to receive." (*Id.,* ¶64);

      d. Shenkan received fees "on behalf of Fabian," (*Id.*, ¶45);

e. Fabian defines the "balance" purportedly owed in the *ad damnum* clause as "1,334,522.75 representing Fabian's lodestar of $1,379,522.75 less the $45,000 he has been paid." (*Id., ad damnum* clause).

36. Defendants filed an Amended Answer and Counterclaim to the Amended Complaint. (*Fabian*, ECF 29)

37. In *Fabian*, Fabian did not request a portion of attorney fees from Shenkan's other class actions that Fabian had performed legal research and writing services on; the relief requested was limited to a share in the attorney fee award entered in *Maszgay.*

38. In addition to *Fabian*, Fabian seeks to challenge the propriety of Shenkan's claim for attorney fees in *Langer*. Rather than litigating his claimed right to an attorney fee for other cases within the *Fabian* action (as Plaintiffs submit would be most efficient), Fabian sought to intervene in *Langer* and assert what could only be properly characterized as a facially improper equitable charging lien. (**Exhibit 3**).

***Fabian's Equitable Charging Lien in Langer v. Capital One Class Action***

39. Approximately five (5) months after Fabian and Shenkan severed their relationship, Shenkan settled another class action, *Langer v. Capital One Auto Finance, a division of Capital One, N.A.*, 2:16-cv-06130-HB ("*Langer*).

40. On May 24, 2019, the Eastern District of Pennsylvania preliminarily appointed Shenkan as sole class counsel in *Langer*. A copy of that Order is attached as **Exhibit 2**.

41. Like in *Maszgay*, in *Langer* (and all other cases), Shenkan had a written contingency fee agreement with the clients, not Fabian.

42. In *Langer,* Fabian provided legal research and writing services at Shenkan's direction and request.

43. In *Langer*, as in all of Shenkan's cases, Fabian:

(a) Did not represent any clients;

(b) Did not have any co-counsel agreement;

(c) Did not have the consent of any client to share any attorney fee with Shenkan;

(d) Did not enter his appearance;

(e) Did not appear in any proceedings or settlement conferences or mediations.

44. On November 6, 2019, just two days before the final approval hearing in *Langer*, and without notice to the Plaintiffs, Defendant Rudy Fabian – having failed to file any formal motion to intervene – filed a Motion of Attorney Rudy A. Fabian for an Award of Attorney Fees and in Opposition to Plaintiffs' Previously Uncontested Motion for Final Approval of Settlement Agreement (hereafter "Charging Lien") in *Langer*. (**Exhibit 3**). Fabian asked the *Langer* court to award him a portion of the attorney's fees, while admitting that Shenkan had already paid him for the work performed (though apparently not enough). (*Id*., p. 7).

45. Like in *Maszgay*, Fabian references an hourly rate of $36.00. But this figure is nonsensical as Fabian was remunerated on a fixed rate basis. This figure is also refuted by the IRS 1099s (**Exhibit 1**) which Fabian relied on for tax filings. Fabian's speculative calculation does not include, *inter alia*, the discretionary bonuses that Shenkan also paid Fabian, at Shenkan's **sole** discretion. In addition, the sufficiency of consideration is not a ground to evade the agreement between Shenkan and Fabian, which is what Fabian is attempting to do in his filings. Like the *quantum meruit* claim Fabian asserted against Shenkan as presently pending in the *Fabian* case, Fabian's equitable Charging Lien seeks an "[e]quitable portion of the fees." (*Id.*, p. 6).

46. Though seeking the ***identical relief*** sought in *Maszgay* albeit attempting to do so through a different means (i.e., an equitable charging lien and intervention), Fabian has no equitable right to share in any attorney fee award entered in *Langer* (or any other case).

47. In *Recht v. Urban Redevelopment Auth. of Clairton,* 402 Pa. 599, 168 A.2d 134 (1961), the Pennsylvania Supreme Court held that for an attorney charging lien to be recognized and applied, the following five elements must exist:

> (1) there is a fund in court or otherwise applicable for distribution on equitable principles;
>
> (2) the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid;
>
> (3) it was agreed that counsel look to the fund rather than the client for his compensation;
>
> (4) the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised; and,
>
> (5) there are equitable considerations which necessitate the recognition and application of the charging lien. *Recht,* 168 A.2d at 138–39.

48. Fabian is not able to satisfy all of these elements, particularly (2), (3), and (5). Succinctly, Fabian had no agreement with any client, nor any co-counsel agreement with Shenkan. Fabian's sole function was to provide limited research and writing to Shenkan, nothing more – for which he was fully paid. Most apparent and importantly, no client ever "agreed" that Fabian could "look to the fund rather than the client for his compensation," thereby failing element (3) above.

49. In point of fact, Fabian has reported the following to the Pennsylvania Disciplinary Board:

> Professional Liability Insurance: I do not maintain professional liability insurance <u>because I do not have private clients and have no possible exposure to malpractice actions</u> (e.g. retired, full-time in-house counsel, prosecutor, full-time government counsel, etc.) (Emphasis added.) (**<u>Exhibit 4</u>**)

50. Awaiting briefing on the issues and an aggregate hourly submission by Shenkan Injury Lawyers, LLC., the Eastern District of Pennsylvania entered an order holding that the putative attorney fees in the amount of $2.6M plus expenses be held in escrow. A copy of that

order is attached as **Exhibit 5**.[1]

## COUNT ONE
## DECLARATORY JUDGMENT

51. The above paragraphs are incorporated by reference as though fully set forth herein.

52. At Plaintiffs' direction, Fabian performed research and writing services in *Maszgay* and Langer and other cases for Shenkan. Plaintiffs reasonably believe that Fabian – just like in *Fabian* (for *Maszgay*) and *Langer* – will be raising similar claims for a share of any attorney fees recovered if and when each case resolves favorably by settlement or judgment.

53. Plaintiffs ask this Court, pursuant to the Federal Declaratory Judgment Act, 28 USCS 2201 and 2202, to declare that Fabian has no legal right to share a portion of the fees in *Maszgay*, *Langer*, or any other of Plaintiffs' cases that Defendants performed work on.

54. There are several reasons why the Defendants are not entitled to additional compensation in *Maszgay*, *Langer*, or any other case. These reasons were also asserted in Defendant's Amended Answer, Affirmative Defenses, and Counterclaims in the related *Fabian* litigation (*Fabian,* ECF 29).

(End of Page)

---

[1] Plaintiffs will be filing a Notice of Filing of this declaratory action in *Langer* to notify Judge Bartle that, in accordance with Rule 1 – for efficiency purposes and to avoid duplication of proceedings – Plaintiffs are attempting to have the viability of Defendants' claims for attorney fees in ***all*** of Plaintiffs' cases which Fabian worked on determined efficiently in one matter, rather than on a piecemeal, case-by-case basis. In the event Judge Bartle of the Eastern District Court desires to litigate, within *Langer*, Fabian's fee dispute pertaining to the attorney fees in the *Langer* action, then Plaintiffs will promptly withdraw the request that this action encompass the *Langer* attorney fee dispute.

**I. Fabian may not assert a claim for a share of attorney fees recovered by Shenkan, or any sort of lien on attorney fees in Shenkan's cases, when the only existing contractual relationship with the clients is between Shenkan and the clients**

55. A client has no duty or obligation to pay a lawyer a portion of a contingency fee with whom it had not contracted in writing. Written contracts exist between Shenkan and the respective clients and the existence of these contracts bars any claim by Fabian in contract or equity for attorney fees in Shenkan's cases, especially since Fabian was fully paid by Shenkan.

**II. Fabian's claim is barred because he received consideration (a "corresponding exchange of value" of $315,426.40 for Fabian's legal research and writing services)**

56. Fabian states that any judgment in his favor should be reduced by the amount of compensation he ***already received*** for his independent contractor services in *Fabian*. (*Fabian,* ECF 15, *ad damnum* clause, p. 11) and in *Langer* (**Exhibit 3**, p. 7).

57. These are admissions by Fabian that he received a "corresponding exchange of value" for his services.

58. A cause of action for unjust enrichment may arise only when a transaction of the parties not otherwise governed by an express contract confers a benefit on the defendant to the plaintiff's detriment "without ***any corresponding exchange of value***."). *Villoresi v. Femminella,* 856 A.2d 78 (Pa. Super. 2004).

59. Also, a quantum meruit claim is viable only where defendant has received a benefit from plaintiff which would be unjust to retain "***without some payment.***" Fabian is well-aware of the "corresponding exchange of value" bar to a quantum meruit claim though continues to maintain this frivolous claim in multiple cases, reasoning that the Pennsylvania Superior Court was "simply careless" in the *Villoresi* opinion when it included the "corresponding exchange of value" criterium, despite the fact that the "corresponding exchange of value" doctrine cited in Villoresi

has been found to exist by numerous State and Federal Courts in Pennsylvania (*Fabian,* ECF 21, p. 10).[2] As Shenkan and Fabian agreed, Fabian received all of his bi-monthly payments (See *Fabian,* ECF 29-2) and even discretionary bonuses, totaling a combined amount of $315,426.40. (**Exhibit 1**). Shenkan also reimbursed Fabian's expenses and provided him an office and computer equipment. (A copy of Fabian's expense invoices and Shenkan's invoice for the subject computer are attached as *Fabian,* ECF 29-12 and 29-5, respectively). In exchange, Fabian provided Shenkan the legal research and writing on Shenkan's cases, including but not limited to *Maszgay* and *Langer*.

60. In the absence of any contract in which Fabian was promised additional compensation (which he was not), he could have no expectation that he would be provided additional compensation. Shenkan was not unjustly enriched by Fabian's work. Shenkan paid Fabian for his services, i.e. a corresponding exchange of value.

61. Fabian received a corresponding exchange of value / consideration for the very work which he now seeks additional money. As such, Fabians' quantum meruit claims are barred as a matter of law.

**III. Rules of Professional Conduct, Common Law Prohibition, and Doctrine of Unclean Hands**

62. Attorney Fabian and Attorney Shenkan were not in the same firm. Fabian Legal Services, LLC. is a separate entity from Shenkan Injury Lawyers, LLC.

63. Pa. R.P.C. Rule 1.5(e) and the common law prohibit an attorney from sharing attorney fees without the client(s)' consent.

---

[2] The Honorable Judge Arthur Schwab, who is presiding over *Fabian*, has similarly held that the theory of unjust enrichment only applies to enforce a promise ***not supported by consideration***. *G&T Conveyor Co. v. Allegheny Cty. Airport Auth.*, 2011 WL 2634161 (W.D. Pa., July 5, 2011).

64. Fabian never obtained the consent of any client to share in any attorney fees. Affidavits of clients in *Maszgay* and *Langer* objecting to Fabian sharing in the fees are attached as composite **Exhibit 6**. Only Shenkan had the written agreements with clients.

65. Fabian is attempting to sidestep the Rules of Professional Conduct under the ruse of equity, and obtain a portion of attorney fees without disclosure to or consent by Shenkan's clients.

66. An attorney may not share a portion of the fee with another attorney if the fee sharing fails to comply with the Rules of Professional Conduct dealing with fee sharing.

67. Among the various unclean hands affirmative defenses in *Fabian*, (*Fabian,* ECF 29, ¶ 86) which are incorporated herein, is the undisputed fact that the law firm Fabian Legal Services, LLC. is (or at all relevant times was) owned by a non-lawyer, Camille Fabian, in violation of 15 Pa. *C.S.* §8105 and the Pennsylvania Rules of Professional Conduct. (See *Fabian,* ECF 29-1). Despite such patent impropriety, Fabian Legal Services, LLC. filed the *Fabian* suit seeking a share of the attorney fee in *Maszgay*.

68. In addition, Fabian is intentionally interfering with Shenkan's contractual rights with its clients who have contractually agreed that Shenkan is their legal counsel, that Shenkan is their sole representative and that only Shenkan is entitled to a fee from their settlement amounts.

**IV. The parties' express agreement bars Fabians' claim**

69. The parties had an express oral agreement.

70. The doctrine of quantum meruit/unjust enrichment on which *Fabian*'s claim is based is inapplicable when the re*lations*hip between the parties is founded upon a written agreement or express contract. *Wilson Area Sch. Dist. v. Skepton*, 586 Pa. 513, 895 A.2d 1250.

71. Further, as set forth above, the parties' express contract did not provide for any fee

sharing.

72.     Accordingly, Fabian's *quantum meruit* claim is barred by the existence of an express contract, and an adequate remedy at law (breach of contract).

73.     Shenkan paid all periodic payments plus discretionary bonuses (see 1099's, **Exhibit 1**), reimbursed Fabian's expenses (*Fabian,* ECF 29-12*),* and provided an office and computer equipment (*Fabian,* ECF 29-5), which is payment in full of the compensation agreed to by the parties.

74.     Fabian *admits* he received consideration (though not conceding the full amount he received) from Shenkan for the work he performed on *Maszgay* and *Langer,* stating "45,000" for the work Fabian performed on *Maszgay* and $23,500.80 for the work he performed in *Langer.* (*Fabian,* ECF 15, ¶43-44, and *ad damnum* clause and **Exhibit 3**, p. 7).

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

A.  Declare that Rudy Fabian and Rudy Fabian Legal Services, LLC have no right to a share of any attorney fees generated from, or to be generated from, any of Shenkan's cases;

B.  Declare that Fabian has no right to any additional money from Shenkan arising out of work he performed as an independent contractor on Shenkan's cases;

C.  Declare that Fabian refrain from any involvement in any of Shenkan's pending cases;

D.  Enjoin Fabian from asserting any claim in or interfering with Shenkan's cases; and,

E.  For any further relief that is necessary to have Fabian cease his improper conduct as alleged in this Complaint.

End of Page.

**MURRAY, HOGUE & LANNIS**

By: */s/ Jon Hogue*
Jon Hogue
PA I.D. No. 19780
707 Grant St., Suite 3400
Pittsburgh, PA 15219
jhogue@mhandl.com

**DILLON, McCANDLESS, KING COULTER & GRAHAM, L.L.P.**

By: */s/ Thomas W. King, III*
Thomas W. King, III
PA I.D. No. 21580
128 West Cunningham St.
Butler, PA 16001
tking@dmkcg.com

**SHENKAN INJURY LAWYERS, LLC.**

By: */s/ Richard Shenkan*
Richard Shenkan
Pa. I.D. No. 79800
6550 Lakeshore St.
West Bloomfield, MI 48323
rshenkan@shenkanlaw.com

*Co-Counsel for Plaintiffs Richard E. Shenkan and Shenkan Injury Lawyers, LLC.*